52  593
d119  163

### No. 13,405.

STATE OF LOUISIANA EX REL. J. T. YOUNG VS. E. L. WOODSIDE, ASSESSOR.

#### SYLLABUS.

1. The object of the law in directing a complete registration of voters in the year 1899 to be made was in preparation for the general State election to be holden in April, 1900.
2. Registration made in 1899 qualified electors to participate in the general election of 1900.
3. The provision of Section 34 of Act 199 of 1898, declaring for a new and complete registration "in every year in which a general State election is held," applies to future general elections—elections in other years than that of 1900.

APPEAL from the Fifteenth Judicial District, Parish of East Baton Rouge—*Brunot, J.*

*Thomas J. Kernan* and *L. D. Beale* for Relator, Appellee.

*Milton J. Cunningham,* Attorney General, and. *C. C. Bird,* for Respondent, Appellant.

The opinion of the court was delivered by.

BLANCHARD, J. This is an appeal from a judgment making peremptory a writ of *mandamus* requiring the defendant, in his capacity as Registrar of Voters for the Parish of East Baton Rouge, to register the relator in the present year, 1900, as a voter in said parish, for the ward and precinct in which he resides.

The contention of the respondent Registrar, in effect, is that no necessity exists for registering the relator in 1900 in order to qualify him to vote at the general State election to be held in April, 1900, and that this is so because relator is already a duly qualified voter for and at the said April election by reason of the fact that he was duly registered as a voter in the said Parish of East Baton Rouge, and for his proper ward and precinct, on the 18th day of November, 1899.

The issue is thus plainly and directly made whether or not the relator, having been registered as a voter in the year 1899, must again register in the present year 1900 in order that he may exercise his right of suffrage at the State election in April next.

Relator's position is that he must be registered in 1900 in order to vote at said election.

Respondent's position is, that this is not so, and that relator is a duly qualified elector at all elections in 1900 by virtue of his registration in 1899.

The solution of the issue thus presented is involved in the interpretation to be placed upon Act No. 199 of the Acts of 1898, entitled "An Act relative to the registration of voters throughout the State," etc., approved July 14th, 1898, and declared to be effective from and after January 1st, 1899.

The second section of this act provides for a complete registration of voters beginning with January 1st, 1899.

Accordingly, pursuant to this requirement, in the year just ended, a registration of voters throughout the State was made. This registration has but recently been completed.

The question arises what was the object of this general registration in 1899? There is but one sufficient reply and that is that it was made in preparation for the general State election which, under the Constitution and laws, must be held in April, 1900.

There was no general election in 1899 to prepare for, and, therefore, the registration in 1899 was useless *unless intended for the election of 1900*. It subserved no purpose unless it could be utilized for the election in 1900.

It will not do to say it was intended to qualify voters to participate in the primary elections and party conventions called in 1899 to nominate candidates for office, under the provisions of that article of the Constitution which states that only those persons shall participate in the nomination of candidates for office who are duly registered voters. The law itself did not prescribe the holding of primaries and conventions in 1899 to nominate candidates.

How then may it be said that any were to be held that year? The ordering of primaries and conventions to nominate candidates is wholly a party matter and might or might not be held in 1899 according as the several political parties in the State might or might not, through their appropriate committees, constituting the party machinery, order the same.

Besides, it surely could not have been intended that those who were on the registration rolls of 1899 might participate in the nomination of candidates in that year to be voted for in 1900, and yet, unless re-registered in 1900, could not support in the latter year at the general election the very candidates they had nominated in the previous year. It would virtually be the forming of one constituency to nominate, and another to elect.

It is a cardinal rule of the interpretation of laws that the intention of the law maker is to be ascertained and given effect to.

The Legislature of 1898 must not be put in the position of having in 1899 ordered a registration of voters which could accomplish no purpose whatever.

Nor must it be put in a position of intending to direct that one list of registered voters made in 1899 should nominate candidates for office in 1899, and another list of registered voters made in 1900 was to elect those candidates to office in 1900.

Effect, for some useful purpose, must be given to the registration made in 1899, and the only effect that can be given it is that it qualified electors to participate in the general election called by law for 1900.

Now, if this be so, it is at variance with that interpretation of Section 34 of Act 199 of 1898, which holds it to be mandatory that, under

the provisions of that section, a new and complete registration of voters is to be made throughout the State in that part of the year 1900 between January 1st and April 17th—the date of the general State election—and that none but those electors who register in 1900, prior to the April election, may participate in that election as voters.

The one interpretation of the Statute of 1898 would give effect and purpose to the registration ordered and made in 1899; the other would render vain and useless that registration.

The court must adopt the more reasonable of the two, and that is that the registration made in 1899 applies to the election to be held in 1900, and the provisions referred to in Section 34 of the Act, declaring for a new and complete registration "in every year in which general State elections is held," applies to future general elections— elections in other years than that of 1900.

The Registrar of Voters, under another sentence to be found in Section 34 of the act, is required to open his office on January 1st, 1900, and keep it open for sixty days for the registration of voters; but this is construed to mean nothing more than a revision of the preceding registration made in 1899, and an addition to it, registering those who have since become entitled to vote, or those who neglected to register in 1899.

A circumstance which strengthens the view hereinabove set forth is the apparent impossibility of providing for a full registration in 1900 in time for the April election of that year.

The time is not sufficient for the purpose and the result would be that when the registration books close thirty days before the election, as they must under the law, thousands of electors entitled to vote under the Constitution and laws would find themselves deprived of the privilege because not given a sufficient opportunity to register.

That interpretation of the act must be avoided which would bring about this result.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now adjudged and decreed that relator's application for the writ of mandamus be rejected and dismissed and the rule *nisi* be discharged.

The Chief Justice and Mr. Justice Monroe find themselves unable to concur in the conclusions reached by the majority of the court.